[Filed April 14, 1887.]

## STATE OF OREGON, Respondent, v. NELSON DILLEY AND HENRY JOHNS, Appellants.

Criminal Law — Indictment, Form of. — In an indictment for taking money by force from the person of another, it is not necessary under our statute to allege that the money taken was the property of another than the defendant.

Evidence — Practice. — Where on a trial the State proved that the tracks of a horse ridden by the defendant were similar to those of another horse owned by the defendant, upon the direct testimony, and the defendant introduced testimony showing that the horse was shod, and the State in rebuttal introduced witnesses to show that the horse was not shod; *held*, that it was error to exclude evidence offered by the defendant after the rebuttal by the State, that the horse was shod the day after the commission of the crime.

Appeal from Marion County.   Reversed.

*Tilmon Ford,* and *George H. Burnett,* for Appellants.

*George W. Belt,* District Attorney, for the State.

THAYER, J.—The appellants and one George Simmons were indicted jointly in the Circuit Court of Marion County for the crime of assault and robbery, being armed with a dangerous weapon. They all pleaded not guilty, and on the trial the appellants were convicted and said Simmons was acquitted. From the judgment of conviction entered thereon, this appeal was taken and brought here. The indictment reads as follows:—

"The said Nelson Dilley, George Simmons, and Henry Johns, on the twenty-first day of August, 1886, in the county of Marion, and State of Oregon, then and there being armed with a dangerous weapon, to wit, a pistol loaded with powder and ball, did then and there feloniously commit an assault upon one Ah Sing, with intent if resisted to kill or wound the said Ah Sing, and then and there feloniously took three twenty-dollar gold pieces and one ten-dollar gold piece of the current coin of the United States of America from the person of said Ah Sing, and against his will."

The following is the section of the statute under which the indictment is drawn:—

"Section 533. If any person being armed with a dangerous weapon shall assault another with intent, if resisted, to kill or wound the person assaulted, and shall rob, steal, or take from the person assaulted, any money or other property *which may be the subject of larceny,* such person, upon conviction thereof, shall be punished by imprisonment in the penitentiary not less than five nor more than twenty years."

The indictment follows form No. 10 in the appendix to the Criminal Code, except where it enlarges upon that form, by naming the kind of dangerous weapon used.

On the trial to support the issues on the part of the State, the prosecution offered testimony tending to show that certain horse tracks were found in the vicinity of the scene of the alleged robbery, and were tracked in the direction of where the defendants claim to have been stopping at the time, and also tending to show that a *brown* horse, belonging to one of the defendants, made tracks similar to those found near the scene of the robbery, and

that said horse was shod with shoes upon the fore feet, which had certain peculiarities; and further that two witnesses for the prosecution examined a certain *roan* horse belonging to said defendant, and all other horses found upon the premises where the defendants were stopping, and found *none* except the *brown* horse that made tracks similiar to those found near the scene of the robbery; that said examination was made on Sunday, following the Saturday morning on which the robbery was alleged to have been committed, and that said defendants were not present, but were confined in jail at the time. After the prosecution rested, the defendants offered testimony tending to show that Simmons, one of the defendants, in the afternoon before the robbery brought said *roan* horse from near the place where the robbery was committed, over a part of the way where these tracks were found, and tending to show that the *roan* horse was at the time shod, and made tracks similar to the *brown* horse; and that said defendant Simmons had been harvesting at George B. Miller's where the robbery was committed, and that the tracks of said *roan* horse were made when said Simmons returned from said harvesting on said afternoon. After the defendants rested, the prosecution offered testimony tending to show that said Simmons had stated that said roan horse was not shod at the time of the robbery, and thereupon recalled the two witnesses who had examined the roan horse on the Sunday referred to, Miller and Croisan, who both swore that said roan horse was not shod at that time, and the prosecution then rested. The defendants then offered as a witness Orville Hubbard to prove that said *roan* horse was shod on said Sunday, when said horse's feet were examined, but the prosecution objected to the introduction of such evidence, claiming that the same should have been introduced by the defense on examination in chief, and the court sustained the objection, and the defendants excepted. The defendants by their attorneys still offering this testimony, offered to prove that they and their clients had only come into possession of the fact that the witness Hubbard would so testify, since the testimony on that subject was offered by the prosecution in rebuttal as aforesaid, and that the defense was taken by surprise at the said

testimony of the prosecution, but the court still sustained the objection, and the defendants duly excepted to said ruling as an abuse of the court's discretion.

The appellants' counsel have alleged a number of grounds of error in the judgment of the court below which we shall not notice, as we regard them entirely untenable.  The main ones are that the indictment is defective in not alleging that the money charged to have been taken was the property of another, and that the court erred in not allowing them to call said Orville Hubbard as above mentioned.

*Indictment need not allege ownership.*   The indictment at common law would have been defective.   It would have been necessary under that system to have averred specially to whom the money belonged.   The fact that it might have belonged to the robber and not to the person robbed had to be negatived.   The presumption was that the person having possession of it owned it, but that did not answer the nicety of the law as it then existed; it had to be affirmatively alleged that it was the property of some one aside from the person who forcibly compelled its surrender to himself.   But our statute has dispensed with the necessity of so useless a requirement.   It has provided in express terms what shall be a sufficient statement in an indictment for robbery, being armed with a dangerous weapon.   (Crim. Code, § 71.)   The appellants' counsel lay a good deal of stress on the qualifiying clause in said section 533, Criminal Code, above set out, containing the words, "which may be the subject of larceny."   That clause refers to the words preceding it, "any money or other property"; all that is necessary to determine where one person has taken from another property under the circumstances averred in the indictment herein, is whether it is such an article as might be the subject of larceny.   The money of course could have been the subject of larceny, but the counsel contend that in order to have been the subject of larceny it must have been the property of another, which the indictment does not allege.   The indictment, however, does allege all that the statute says need be alleged.   It seems to me that the counsel have undertaken a difficult task in attempting to establish that an express provision of

the statute is nullified by implication or inference. Conceding that, in order to constitute the offense charged, the money must have belonged to the Chinaman, or to some person other than the defendants in the prosecution, and that the clause in said section 533 required that such should have been the fact, it would not follow that the statute required such fact to be expressly alleged, especially when another provision of the same title excludes the necessity of alleging it. The statement in the indictment that the defendants took "three twenty-dollar gold pieces and one ten-dollar gold piece . . . . from the person of said Ah Sing," etc., left the inference that the coin belonged to Ah Sing. The proof of the facts alleged in the indictment established, presumptively, that the defendants dispoiled Ah Sing of his money, but that would not necessarily preclude the defendants from disproving his ownership of it. They had the right under their plea of not guilty to show that the money in fact belonged to them. The change in the manner of pleading made by the statute does not deprive defendants in such cases of any substantial right; it has only relieved the necessity of inserting an unnecessary allegation in the indictment. It follows that the indictment is not defective.

*Introduction of evidence.* The other ground of error, however, is more difficult to surmount. The robbery was committed in an outhouse on said George B. Miller's farm near Gervais. The house was occupied at the time by five Chinamen, including the said Ah Sing. Three persons were engaged in the commission of the offense, who came to the place upon horseback, and the identity of the said horse tracks with those of the brown horse was a material circumstance in the proof of guilt of the defendants. The prosecution undertook to establish such fact by the testimony of witnesses. The issue so made by the evidence involved not only that the tracks examined were similar to those made by the brown horse, but unlike those made by the roan or any of the other horses found upon the premises. Those witnesses did not state in direct terms, when first upon the stand, that the roan horse was not shod, but certainly that he was not must have been implied from what they did say. If the roan horse had no shoes on, that would have

occasioned a marked difference between the tracks of the two. At all events, the prosecution attempted to show that the tracks made by the brown horse were peculiar and different from those made by the roan, and I cannot see why that did not include proof that the roan was not shod. That evidently was one reason why their tracks were thought to be dissimilar, otherwise why should the witnesses have been recalled to prove that the roan had no shoes on. It looks to me as though that fact was a part of the prosecution's case; and that when the said witnesses were recalled by the prosecution, their testimony as to the roan horse not being shod merely went to strengthen the evidence that had already been given upon that point. It was the reason, and may have been the only reason why there was a difference between the tracks of the two horses. The prosecution should have submitted all its proofs upon that point before it rested, and it seems to me that there was no greater inpropriety in the defendant's calling Orville Hubbard to show that the roan horse was shod, than there was upon the part of the prosecution in recalling Miller and Croisan, after having rested, to prove that he was not shod. According to the regular mode of conducting an examination in such cases, the party having the affirmative must introduce all the evidence to make out his side of the issue. Then the evidence of the negative side is heard, and finally the rebutting proof of the affirmative, which closes the investigation. (*Hastings* v. *Palmer*, 20 Wend. 225.) Our statute prescribes substantially the same course. (Civ. Code, § 194.) Ordinarily the defendants would have had no legal right to call said Hubbard after having closed their testimony; but as the prosecution had rested without having examined the two witnesses upon the point, and was allowed to recall them to make proof of the fact, after the defendant had rested, I do not see why the latter should not have been entitled to call their witness. It may be claimed that the testimony of the horse being shod introduced a new fact, and that the evidence upon the part of the prosecution was rebutting proof. I am aware that there is a class of cases which hold that matter introduced by a party having the negative of an issue may be disproved by the party having the affirmative, although the

proof goes to sustain the plaintiff's evidence in chief; cases where a defendant has undertaken to prove an *alibi* by showing that he was at a particular place from that alleged at the time of the occurrence, and when the defendant denied the plaintiff's ownership to personal property, in a contention regarding its title, and attempted to show that it belonged to a third person, are examples.   There it was held that the plaintiff in the former case might prove in rebuttal that the defendant was not at the particular place as claimed, and in the latter, that he might call the third person and show by him that he was not the owner of the property.   It seems to me that this case is clearly distinguishable from the class referred to.   Here no distinct independent fact was attempted to be proved by the defendants. The two witnesses for the prosecution swore that they examined the roan horse and that his tracks did not correspond with the tracks found.   That was the affirmative of the issue the prosecution attempted to maintain, and it was required under the rule referred to herein, " to introduce all the evidence to make out its side of it."   If the horse was not shod at the time, that was one of the best points in the proof to establish the affirmative of the issue.   It was direct proof, it seems to me, and not rebutting evidence, and the defendants have the right to controvert it whenever given, or in whatever stage of the trial it was admitted. The defendants held the negative of this issue, and so long as the prosecution was allowed to give evidence to sustain the affirmative, they should have been allowed the right to disprove it.   (*Shepard* v. *Potter*, 4 Hill, 202.)

This may appear to be a very refined view of the question, but the objection to the admission of the testimony was wholly technical.   If the evidence offered had been cumulative, as contended by the counsel for the prosecution, the fact of its not having been introduced before was excused.   The defendants claimed, and their counsel offered to show, that it had not been discovered until after they rested their case, and I fail to understand why it should have been rejected, if not strictly rebutting proof.   The defendants were on trial for a high crime, an offense which subjected them, if established, to severe punish-

ment; and while they have no right to complain of its severity, where their guilt is regularly established, still they have the right to demand that the trial, to ascertain whether they are guilty or not, shall be conducted in accordance with law and justice. For the reasons here stated the judgment of conviction will be remanded for a new trial.