Argued October 4; affirmed October 25; rehearing denied
November 22, 1938

# STATE *v.* McCARTHY

(83 P. (2d) 801)

*John J. Beckman* and *Allen Brown,* both of Portland, for appellant.

*James R. Bain,* District Attorney, and *T. B. Handley,* Deputy District Attorney, both of Portland, for the State.

RAND, J.   The defendant, Leroy Hershel McCarthy, was indicted and tried upon an indictment, charging him with the crime of murder in the first degree.   The jury returned a verdict, finding him guilty of the crime charged without recommending life imprisonment, and he was sentenced to death, from which judgment of conviction he has appealed.

The circumstances surrounding the commission of the crime, as shown by the evidence, were substantially as follows:

On August 10, 1937, the defendant, being armed with a loaded revolver, held up and robbed a Standard Oil station in the city of Portland and one Floyd Fuelner, the attendant then in charge of said station, and took and carried away from the cash register sixteen one-dollar bills and some other currency and coin, the exact amount of which is unknown. Immediately after committing the robbery, the defendant fled, taking the money with him. Fuelner then got into a car which had just been driven into the station by Mr. R. N. Wallace and they started to follow and apprehend the defendant. They overtook the defendant on the corner of Eleventh and Taylor streets in the city of Portland, a short distance from where the robbery had occurred. Upon seeing the defendant, Fuelner jumped out of the car and grappled with the defendant and, while so struggling, the defendant shot and killed the deceased. The weapon used was a small revolver containing bullets the points of which had been cut in order to make, as the defendant said: "a bigger hole".

There were a large number of witnesses to the shooting, one of whom testified that almost immediately before the shooting, she saw the defendant walking along the sidewalk with a roll of bills in his hands which he was counting. Another witness testified that, at the time of the shooting, she saw a roll of bills in one of defendant's hands.

After shooting the deceased, the defendant walked a short distance, where he got into an automobile driven by a Mr. Dougherty, placed the gun against Dougherty's stomach and told him "to get going". After

riding a short distance, the defendant got out of the car and, while walking down Harrison street, was arrested by a member of the police force whom Dougherty had informed of what the defendant had done. While making the arrest, the defendant attempted to shoot the officer and only submitted to arrest after he had been overpowered. At the police station the defendant admitted the robbery and referred to the boy he had shot, saying: "I hope the son of a bitch dies", and "he wouldn't have got shot if he hadn't chased me", and, after being informed that Fuelner had died, he said: "It was his own fault; if he hadn't chased me he would probably have been alive today". The defendant also made and signed a written statement, in which he confessed to the commission of the robbery and to the shooting of deceased.

Defendant's first contention is that the indictment is insufficient to charge murder in the first degree for, while it charges that the crime of murder in the first degree was committed while the defendant was engaged in the commission of the crime of robbery, it fails to charge that the money taken was not the property of the defendant.

■ Regardless of what may have been the rule of the common law, or is the rule in other jurisdictions, upon this question, it is settled in this state that, in an indictment for taking money by force from the person of another, it is not necessary, under our statute, to allege that the money taken was the property of another than the defendant: *State v. Dilley*, 15 Or. 70 (13 P. 648); *State v. Eddy*, 46 Or. 625 (81 P. 941, 82 P. 707).

■ The reason for applying a different rule in this state upon this question than that which obtains in some other jurisdictions is that certain forms of indictment were adopted as a part of the Code of Criminal Pro-

cedure in this state at the time that Code was enacted in 1864, and it has been uniformly held that these forms are sufficient when applicable. The form thus adopted, where the indictment charges robbery, does not require any averment as to the ownership of the property taken and the form which was also adopted where the crime charged was murder committed in the commission or attempt to commit rape, arson, robbery or burglary also negatives the idea that, where the crime attempted or committed was robbery, any allegation of ownership is necessary.

For this reason, it is unnecessary to consider any of the other objections urged by the defendant based alone upon this alleged defect in the indictment.

■ Defendant also objects to the admission in evidence of an outcry or declaration made by deceased just as the defendant was leaving the station with the stolen money that a robbery was being committed. We think this testimony was admissible as a part of the res gestae and not the narrative of a past event. See *Bow v. People,* 160 Ill. 438 (43 N. E. 593); *State v. Driscoll,* 72 Iowa 583 (34 N. W. 428); 4 Elliott on Ev., sec. 3134; Underhill, Crim. Ev., 4 Ed., sec. 611.

■■ The defendant also assigns error in admitting the testimony of the witness LaRue, one of the officers of the Standard Oil Company, as to the amount of the shortage in the cash receipts that had been taken from the cash register. He testified that there was a shortage of about $27, and based his statement upon an examination made by him, about one hour after the robbery had been committed, of the gasoline and supplies which had been sold that day. The evidence shows that this estimate was made after the state had proved that the cash register was in the same condition it had

been immediately following the robbery, and there was positive testimony tending to show that sixteen one-dollar bills had been taken from the register at the time of the robbery, all of which were found in the defendant's possession at the time of his arrest. The amount of money taken was of no importance after it had been shown that some amount of money had been taken by the defendant from the register, and, hence, had there been error in the admission of this testimony, as contended for by the defendant, it could not have been prejudicial to defendant. We think, however, that this evidence was properly admitted.

■ The defendant also contends that there was no evidence of the robbery except that contained in his confession and invokes the statutory rule contained in section 13-932, Oregon Code 1930, which provides:

"* * * nor is a confession only sufficient to warrant his conviction, without some other proof that the crime has been committed."

Independently of any statements of the defendant, the evidence abundantly proves that the robbery had been committed as alleged in the indictment. The statement of the decedent that he was robbed, which was admitted as a part of the res gestae, was proof tending to show that fact. Again, while the crime of robbery was being committed, one of the state's witnesses, to whom the declaration of the deceased was made, drove into the station while the defendant was there and testified as to the cash register being open and that all the money had been taken therefrom. Hence, even if no confession had been made by the defendant, there was sufficient other evidence to establish that a robbery had been committed at the time and place charged in the indictment.

■ Defendant's principal contention is that the robbery had been consummated and the stolen property had come into the exclusive dominion of the defendant before the fatal shot was fired. This contention cannot be sustained for the reason that the evidence clearly shows that the defendant was running away from the place where the robbery had occurred and was carrying the stolen money in his hands at and immediately before he fired the fatal shot. In the early case of *State v. Brown*, 7 Or. 186, it was held that the robbery ends when the robber acquires unmolested dominion over the property taken and not before. In that case, the court said:

"While anything remains to be done by the robbers to secure complete control over the property taken the robbery is incomplete. The act of taking and carrying away in the case of Brown and his co-defendants, commenced when the seizure was made in the pawnshop of O'Shea, and continued until they had unmolested dominion over the property which they had taken. When they first acquired that control the robbery was ended, and not before."

The carrying away of the stolen property is one of the elements of robbery as well as that of larceny. So long as the defendant was in flight and seeking to find a place in which the stolen property could be secreted, his dominion over the property was not unmolested and the robbery had not ended.

■ An instruction given by the court and excepted to by the defendant contains a correct statement of the law upon this question. That instruction was as follows:

"Robbery is the felonious taking of property from another by force. The personal possession of the property by the party robbed may be actual or constructive. If the property is in his presence and control, though

not on his person, it is sufficient. There must be actual taking and carrying away. Such actual taking and carrying away, being necessary to the robbery, is a part of the robbery, and while one engaged in the criminal enterprise is in the act of so carrying away, he is in the act of robbery. But such carrying away must be from the person, actual or constructive; that is, it must be the same carrying away by which the goods were removed from the immediate presence of the owner. If there has been no interruption or delay in the removal, or intervention of another act inconsistent with the carrying away, if the removal was continuous, uninterrupted, and near in point of time and place to the act of violence; if there had been no opportunity to secrete or secure the fruits of the robbery, and while in such act of carrying the defendant shot and killed any person in the manner alleged in the indictment, it is murder in the first degree.

"It is sufficient if it be proven that the taking by the robber was actually begun in the presence of the party robbed, although it was completed in his absence. The taking is not necessarily concluded by the removal of the money beyond the presence of Fuelner. It could be concluded away from him, and at a distance from his presence. There may be a completed robbery if there is any removal, however slight, of the money taken. The carrying away of the money which was the subject of the robbery from the person of the party entitled to the possession thereof, is a necessary ingredient of the crime, and is as much a part of the crime as the felonious taking or the violence.

"If you find from the evidence beyond a reasonable doubt that there was in this case a robbery as alleged, and if the one engaged in the robbery, within a few minutes of the act of violence, and near the place where it occurred, was still engaged in or continuing in the same act of removing or carrying the money taken in Fuelner's presence, and if there had been no intervening act or interruption inconsistent with such carrying away, and if, while in such act and in the furtherance of it, and to prevent the frustration of

his plan, the defendant shot and killed Floyd Fuelner, it is murder in the first degree.''

This instruction, we think, correctly stated the law applicable to the particular facts proved in the case and fully answers the objection made that the crime had been fully consummated before the murder was committed. With that contention we do not agree. We think that the evidence clearly shows beyond a reasonable doubt that the commission of the crime of robbery continued and accompanied the stolen money up to the very moment when the fatal shot was fired.

After a careful reading of the testimony and a consideration of all the facts and circumstances in the case and of the instructions given, we are satisfied that the defendant has had a fair and impartial trial at the hands of the circuit court and that the judgment appealed from ought to be affirmed. It is so ordered.