Robert E. **CARTER**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 12677.

United States Court of Appeals District of Columbia Circuit.

Decided May 19, 1955.

Petition for Rehearing Denied June 20, 1955.

Mr. William J. Kelly, Washington, D. C., for appellant.

Mr. John D. Lane, Asst. U. S. Atty., with whom Messrs. Leo A. Rover, U. S. Atty., and Lewis Carroll and Arthur Mc-Laughlin, Asst. U. S. Attys., were on the brief, for appellee.

Before PRETTYMAN, WILBUR K. MILLER and FAHY, Circuit Judges.

WILBUR K. MILLER, Circuit Judge.

In the late afternoon of July 11, 1953, Robert E. Carter entered Irvin I. Kozak's dry-cleaning establishment at 1637 P Street, N. W., in the District of Columbia. He threatened Kozak with a pistol, pushed him into a closet, and struck him on the back of the head with the weapon. He then rifled the cash register. As the robber left through the front door, Kozak had raised himself to a sitting position and "came to," as he said, in "a couple of minutes, two to four minutes." He called to police officer George W. Cassels, who was standing in front of the premises at 1633 P Street, just two doors away, where officer Berti lived. The two policemen, who were off duty, had just been to a grocery and Cassels was waiting for Berti, who had gone into his home to leave his purchases. Just beyond 1633 P Street was a playground, which extended back from that street to an alley in the rear of 16th Street.

As Kozak told Cassels his story, the latter saw appellant starting through the playground toward 16th Street. Cassels took after him, first calling to Berti who came out of the house and followed only a short distance behind. He pursued Carter through the playground and down the alley into Church Street, then on to 16th Street. When they were a short distance from the corner of 16th and Church Streets, Carter shot and wounded officer Cassels. Death ensued a few hours later.

Carter was indicted in three counts.[1] Under the first, which charged him with first degree murder in that he purposely killed Cassels with deliberate and premeditated malice, he was acquitted by the jury. On the second count, which was laid under the murder-during-robbery provision of § 22–2401, D.C. Code (1951), and which charged that without purpose so to do he killed Cassels in the prepetration of the Kozak robbery, Carter was found guilty of murder in the first degree.[2] Under the third count, which charged robbery alone, he was convicted.

---

1. The first two counts were returned under § 22–2401, D.C.Code 1951, which is as follows:

"Whoever, being of sound memory and discretion kills another purposely, either of deliberate and premeditated malice or by means of poison, or in perpetrating or attempting to perpetrate any offense punishable by imprisonment in the penitentiary, or without purpose so to do kills another in perpetrating or in attempting to perpetrate any arson, as defined in section 22–401 or 22–402 of this Code, rape, mayhem, robbery, or kidnapping, or in perpetrating or in attempting to perpetrate any housebreaking while armed with or using a dangerous weapon, is guilty of murder in the first degree."

2. By its verdict of not guilty under the first count, the jury found Carter had not killed Cassels purposely and with deliberate and premeditated malice. Having reached that conclusion, the jury could, under the court's charge, have found Carter guilty of no greater crime than the included offense of second degree murder, unless it had believed from the evidence that the robbery was still in progress when the shooting took place. The fact that a robbery is being perpetrated by one who kills another, without purpose so to do and without deliberate or premeditated malice, supplies the element necessary to constitute the crime of first degree murder. Goodall v. United States, 1950, 86 U.S.App.D.C. 148, 150, 180 F.2d 397, 399, 17 A.L.R.2d 1070.

Carter admits he robbed Kozák and shot Cassels. Nevertheless, he appeals from the conviction under the second count of the indictment on the theory that an acquittal as to the charge of first degree murder in that count should have been directed. The basis of the theory is appellant's contention that he had completely finished robbing Kozak when he shot the policeman. Carter argues that, when he left the "immediate vicinity"—a term he does not define— "there was sufficient asportation * * to make the robbery complete, *there having been no pursuit*." (Italics supplied.)

▮▮ Thus appellant recognizes, as he must, that so long as the essential ingredient of asportation continues, the crime of robbery is still in progress; and recognizes the further principle that during continuous pursuit immediately organized and begun, asportation is still going on, with the result that the robber *is guilty of first degree murder if in those circumstances he kills a pursuer.*[3]

In this case, however, there was a slight interval between the time when Carter stole the money and the time when Cassels began pursuing him. The question is whether, for that reason, the trial judge should have instructed the jury that as a matter of law asportation had ended when the pursuit began and that therefore the robbery was no longer in progress when the appellant shot the pursuing officer; and that as a consequence Carter could not be found guilty of first degree murder under the murder-during-robbery count.

We have no doubt that the appellant had not secured to himself the fruits of the robbery, but was still feloniously carrying away the stolen money when Cassels began the chase. The delay was so slight that the bandit had not been able to reach a place of seeming security. This is apparent from the following testimony which he gave during direct examination by his own counsel:

"A. That morning when I came back home, I was walking around. I walked down on 17th Street, just standing on the corner. I walked down to P Street where I held this cleaner up. I left there. I walked back down to 17th Street, around to the corner, up an alley. I went across the school yard. I got half way across. I seen these two fellows behind me. I started walking fast, and they started walking fast. I started running. They started run-

---

3. In State v. Habig, 1922, 106 Ohio St. 151, 140 N.E. 195, at pages 197–198, a case strikingly similar to this as to facts and the legal question presented, the Supreme Court of Ohio said:

"It will therefore be seen that the commission of the crime necessarily includes not only the violent and forcible taking but also the felonious carrying away of the proceeds of the robbery. It is argued with both force and logic that the crime is complete when there has been a violent and forcible taking, though the asportation of the goods may be ever so slight, and from this it is claimed that when the crime of robbery is once complete any homicide thereafter committed, connected with the robbery, is not a commission of homicide in perpetrating a robbery. It is quite clear that the crime of robbery is not complete without some carrying away, and the only question which can arise in this connection relates to the distance the goods must be carried, and the circumstances under which they are carried, in order to segregate the continued asportation from the crime itself. Though the crime of robbery is complete with only a slight asportation, yet, if the carrying away is in fact a long distance, the crime is still in process of commission if pursuit of the robber is immediately begun and continued without interruption until the flight has carried the perpetrator to a place of seeming security, or until uninterrupted pursuit is no longer continuously active. The mere fact of delay in beginning the pursuit until an alarm can be sounded and pursuit organized and instituted does not necessarily segregate the flight and prevent it being part and parcel of the crime. * *' * *'" *

Cf. Commonwealth v. Carey, 1951, 368 Pa. 157, 82 A.2d 240; Commonwealth v. Darcy, 1949, 362 Pa. 259, 66 A.2d 663; State v. McCarthy, 1938, 160 Or. 196, 83 P.2d 801; State v. Adams, 1936, 339 Mo. 926, 98 S.W.2d 632, 108 A.L.R. 838; State v. Messino, 1930, 325 Mo. 743, 30 S.W.2d 750.

ning. So I ran out the school yard into Church Street, across 16th Street; on the other side of Church Street, I looked back, and there was just one. So I kept running. I heard him say something. I didn't know what he was saying. I looked back over my shoulder. He was reaching to his coat, I still running. I pulled out the gun. I turned at the same time, and I shot, and kept running.

\* \* \* \* \* \*

"Q. How long after you came out of this place was it before the two men got behind you? A. Five minutes—six minutes.[4]

"Q. When you came out of this cleaning establishment where did you go? A. I came out and walked to 17th Street.

"Q. How did you walk to 17th Street? A. I walked out of the store, walked to my left,—to my right, to 17th Street.

"Q. What did you do there? A. Then I walked up to the alley in back of the store, walked up that alley, across the school lot. I got half way, and that is when these two fellows got behind me."

■ The trial judge carefully explained to the jury that appellant could not be found guilty of first degree murder under the second count unless the killing was done during the progress of the robbery; that asportation is an ingredient of robbery and that it was for them to say whether that crime was still in progress when the shooting occurred. The jury was amply justified in finding, as it did, that the murder of Cassels was done in the perpetration of the robbery of Kozak.

Affirmed.

4. There was evidence that this interval may have been substantially shorter than Carter's estimate of it. This is a matter of secondary importance, however, for the essential question is whether the initial asportation was still in progress

when pursuit began,—a question which must always depend upon the facts and circumstances of each case of this kind. Of course, the shorter the interval, the more probable it is that asportation was still in progress.