Appellant-defendant was jointly indicted with one Brian Keith Baldwin (Baldwin v. State, 372 So.2d 26) for the alleged robbery and intentional killing of Naomi Rolon subsequent to the effective date of the Death Penalty and Life Imprisonment Without Parole Statute of Alabama (Acts 1975, No. 213, Code of Ala. 1975, § 13-11-1, et seq.)
The two defendants were tried separately. Whether the severance was made at the request of either defendant is not shown by the record in this case. In the absence of a request or objection by one or more co-indictees, it is in the trial court's discretion whether the trial will be separate or joint and, where the record is silent on the subject, it will be presumed that the action of the trial court was proper. Palmerv. State, 15 Ala. App. 262, 73 So. 139 (1916); Matthews v.State, 54 Ala. App. 359, 308 So.2d 718 (1975).
Upon a determination of defendant's indigency, the trial court appointed counsel to represent him on the trial, and after his conviction the same counsel were appointed to represent him on appeal. They have done so with commendable skill and dedication.
Oral evidence on the issue raised by defendant's plea of not guilty consisted exclusively of testimony of witnesses for the State. No witness took the stand for defendant. Defendant himself testified on matters pertaining to the question of the admissibility of some items of evidence, but he did not testify, and did not submit himself as a witness, on the question of his guilt or innocence.
The jury found him guilty as charged in the indictment and fixed his punishment at death by electrocution. Pursuant to §§ 13-11-3 and 13-11-4 of the Death Penalty and Life Imprisonment Without Parole Statute of Alabama, the court conducted a hearing to aid it in determining whether the court would sentence the defendant to death or to life imprisonment without parole and thereafter sentenced defendant to death and set forth in writing, as a basis for the sentence of death, its findings of fact from the trial and the sentence hearing. The findings include four separate aggravating circumstances as listed in § 13-11-6 and only one *Page 365 
of the mitigating circumstances listed in § 13-11-7 of the Death Penalty and Life Imprisonment Without Parole Statute, which was the age of the defendant at the time of the commission of the crime, to-wit, nineteen years.
Soon after defendant was indicted and counsel was appointed for him, a motion was made in his behalf for an investigation and examination as to whether he should be tried as a youthful offender. The court ordered the investigation and examination and, after considering the same, ordered that he "shall not be arraigned and tried as a youthful offender."
According to the undisputed evidence, some of which included confessions of defendant, on the night of March 12, 1977, Naomi Rolon, sixteen years of age, left her home in Hudson, North Carolina, to visit her father who was hospitalized there. She was driving her mother's 1970 Chevrolet Impala, License Plate No. North Carolina EPN-720. Defendant and Brian Keith Baldwin, who at the time were escapees from the Hudson Prison Unit in Hudson, North Carolina, seized the automobile and the keys thereof and drove it to Charlotte, North Carolina, with Naomi therein, despite her protests, pleadings and prayers. At Charlotte they choked her and attempted to rape her. She was stripped of her clothes, stabbed with a knife in various parts of her body, and locked in the trunk of her mother's automobile. They proceeded from there through a part of South Carolina, through Georgia via Atlanta, largely on I-85, and reached Montgomery. Thereafter, they veered from I-85 and drove to Camden, Alabama, where Baldwin stole an El Camino pickup truck, in which was a hatchet. From Camden, Baldwin drove the truck and Horsley drove the Chevrolet Impala, with Naomi in the trunk, down Highway 41 into Monroe County. They drove off the highway into a wooded and bushy area. At that place, Baldwin took Naomi out of the trunk of the automobile and told Horsley to back over her. When he backed up, Naomi stepped out of the way, stumbled into some pine tops, where Horsley again tried to back over her but the wheels of the automobile started spinning. Baldwin then took the hatchet that was in the stolen truck and killed her with it, saying to her, "Move your hands so I can get it over with." She was moaning before he hit her with the hatchet. A blow from the hatchet caused a large gaping wound in the base of her neck that caused her death.
The killing occurred on the night of March 14, 1977. Horsley and Baldwin attempted to cover Naomi's body with pine tops and other brush, left the automobile in the woods, proceeded north in the truck that had been stolen at Camden, and arrived in Lanett, Alabama, at about 3:00 A.M., March 15, where they were apprehended by the police. In the truck was the automobile tag that Horsley had taken off the Rolon automobile in the woods in Monroe County.
Appellant's basic contention for a reversal is found in the first two paragraphs of the conclusion of his brief as follows:
 "The issue before this Court is whether Alabama has jurisdiction of an offense charged under § 13-11-2 (a)(2), Code of Alabama, 1975, when the crime which is the basis for the prosecution thereunder is committed wholly outside of Alabama.
 "The crime of robbery should not be construed to be a continuing offense simply because it is set forth in the Death Penalty Act, and the conviction of Edward Horsley cannot stand because Alabama did not have jurisdiction of the offense alleged in the indictment."
As to the first quoted paragraph, we have no difficulty in agreeing with appellant that, if the crime made the basis of the prosecution was wholly committed outside of Alabama, Alabama has no jurisdiction thereof. There is no contention to the contrary. Nevertheless, appellee strongly contends the crime charged in this case was not committed wholly outside of Alabama. As to that contention, appellant is in disagreement, and there we find the hard core of the main issue between the parties: whether the crime charged was committed wholly *Page 366 
outside of Alabama and, if not, whether enough of it was committed in Alabama as to give the courts of Alabama jurisdiction thereof and enough of it committed in Monroe County to make such county a proper venue. We must proceed to a determination of that question.
We deem applicable what was stated in State v. Parrish,242 Ala. 7, 14, 5 So.2d 828, 834 (1941):
 "In 22 C.J.S., Criminal Law, §§ 133 and 134, pages 217-219, it is declared that courts of a particular sovereignty have no extra territorial jurisdiction of offenses committed outside of their territorial jurisdiction; and on worthy authority it is declared that some offenses partly committed abroad may nevertheless be within the jurisdiction of a local court . . ."
A correct determination of the question cannot be made without careful consideration of the language of the indictment and the language of the particular part of the statute applicable to the crime charged in the indictment. The indictment is as follows:
 "The Grand Jury of said County charge that before the finding of this indictment Brian Keith Baldwin and Edward Horsley, whose names are to the Grand Jury otherwise unknown, feloniously took one 1970 Chevrolet automobile of the value of, to-wit: $400.00, and one set of keys of the value of, to-wit: $1.00, being of the total and combined value of, to-wit: $401.00, the property of Naomi Rolon, from her person, and against her will, by a violence to her person, or by putting her in such fear as unwillingly to part with the same, and said Brian Keith Baldwin and Edward Horsley, whose names are to the Grand Jury otherwise unknown, in the course of the aforesaid robbery, did intentionally kill the said Naomi Rolon by cutting her with a hatchet or other heavy cutting instrument, a further description of which is unknown to the Grand Jury, and that said offense took place subsequent to March 7, 1977, against the peace and dignity of the State of Alabama."
Pertinent provisions of the Death Penalty and Life Imprisonment Without Parole Statute (Acts 1975, No. 213) are as follows:
"AN ACT
 "To provide for a sentence of death or life imprisonment without parole in certain aggravated offenses; to prescribe the manner of charging and sentencing in such cases and to eliminate lesser included offenses in such cases; to limit the maximum punishment in all other cases to life imprisonment; to provide for an effective date of this act.
"Be It Enacted by the Legislature of Alabama:
 "Section 1. Except in cases enumerated and described in Section 2 herein, neither a court nor a jury shall fix the punishment for the commission of treason, felony, or other offenses at death, and the death penalty or a life sentence without parole shall be fixed as punishment only in the cases and in the manner herein enumerated and described in Section 2 of this Act. In all cases where no aggravated circumstances enumerated in Section 2 are expressly averred in the indictment, the trial shall proceed as now provided by law, except that the death penalty or life imprisonment without parole shall not be given, and the indictment shall include all lesser offenses.
 "Section 2. If the jury finds the Defendant guilty, they shall fix the punishment at death when the Defendant is charged by indictment with any of the following offenses and with aggravation which must also be averred in the indictment, and which offenses so charged with said aggravation shall not include any lesser offenses:
. . . . .
 "(b) Robbery or attempts thereof when the victim is intentionally killed by the defendant.
. . . . .
 "Evidence of intent under this section shall not be supplied by the felony-murder doctrine." *Page 367 
In arguing for a reversal, appellant places great emphasis upon the fact that the robbery as alleged in the indictment was committed in North Carolina. The automobile and the keys of the automobile were taken from the victim by force, she was placed in the trunk of the automobile, and defendant and Baldwin gained complete control of the automobile and the keys in North Carolina. This, according to the law of Alabama, constituted a robbery in North Carolina, as all the elements of the crime of robbery had been committed in that State. Lambert v. State,48 Ala. App. 600, 266 So.2d 812 (1972); Root et al. v. State,32 Ala. App. 253, 25 So.2d 180, cert. denied, 247 Ala. 514,25 So.2d 182 (1946).
Notwithstanding the importance of robbery as an essential element of the crime charged, it did not constitute the crime charged in the indictment or a crime proscribed by the death penalty statute. No crime proscribed by that statute falls short of an intentional killing. Each of the fourteen crimes enumerated in the statute has within it the culminating factor of an intentional homicide. The statute is for the prevention and punishment of homicides committed under legislatively determined aggravating circumstances. It is impossible to complete, to consummate, any of the fourteen crimes enumerated without the intentional taking of the life of a human being. Nothing could be clearer, irrespective of the language used as to some of the crimes and the language employed as to others. Thus it has been held.
 "This case concerns the constitutionality of Act 213, 1975 Ala. Acts, p. 701, et seq., which provides penalties for certain aggravated homicides. * * *" In re Jerry Wayne Jacobs, 361 So.2d 640, 1978.
The view of this court that each of the fourteen crimes in the death penalty law consists of homicide with aggravation, and not some crime other than homicide under aggravated circumstances, is emphasized by what was said in Evans andRitter v. State, Ala.Cr.App., 361 So.2d 654 (1977), affirmed in part, reversed in part, 389 Ala., 375 So.2d 270 (1978) as follows:
 "John Louis Evans, III, and Wayne Eugene Ritter were each charged by indictment with the first degree murder of one Edward A. Nassar by shooting him with a pistol while in the commission of a robbery, being a `capital murder' offense within the meaning of Act No. 213, Section 2, Subsection (b), Acts of Alabama 1975, Regular Session."
Each count of the indictment in Evans and Ritter charged them with murder in the first degree. In his dissenting opinion inEvans and Ritter, supra, Mr. Justice Beatty is of the opinion:
 "Clearly, the language of this statute requires that the indictment charge the accused with robbery wherein death results; that is, robbery becomes the principal aggravated offense when the victim is killed during its commission. By these express provisions, an indictment for aggravated robbery, not for murder, triggers the imposition of the death penalty under this particular Section. . . ."
Although our view as just expressed seems inconsonant with the conclusion of Justice Beatty in Evans and Ritter, it is not out of harmony with his supporting rationale, as found in the distinction he makes between murder and intentional manslaughter, manslaughter in the first degree, in that malice is an essential element of murder but is not an element of manslaughter. Our opinion in Evans and Ritter considers that the indictment went further than was necessary in charging murder particularly murder in the first degree. Although a homicide that occurs in a robbery "when the victim is intentionally killed by the defendant" does not require malice, we concluded that there was no harm to defendants by reason of the indictment's charging more than the statute required. As the indictment in this case charges an "intentional killing" but does not charge "murder" in either degree, we believe what we have said herein is not in the direct line of the opposition expressed by Mr. Justice Beatty in his dissenting opinion inEvans and Ritter. *Page 368 
We note also that Judge Bookout, in his dissent in Clementsv. State, 370 So.2d 708, Ala.Cr.App., is of the view that the offense charged in the indictment therein was not the offense denounced in the now and then pertinent provision of the statute, which, according to him, is "robbery" under the aggravating circumstance of an "intentional killing" of the victim. In that respect, the case before us is distinguishable from Clements, in that in Clements defendant was charged with murder in the first degree, while appellant herein was not charged with murder in either degree.
The remoteness in time and space, between the commencement and the end of the atrocious criminal conduct committed by Horsley and Baldwin to their youthful, innocent victim, which carried them out of the state in which it commenced, through two other states and far into the State of Alabama, that lasted for about forty-eight hours, gives rise perhaps to many questions, not material here, as to jurisdiction and venue of whatever crime was committed in each of the states, in each county of each state, through which they passed. The same quantitative remoteness gives color to the point made by appellant, that the aggravated crime denounced by the death penalty act of Alabama was not committed in Monroe County, Alabama.
Neither party has cited a controlling authority on the point. In Alabama, at least, the case is one of first impression. Bizarreries have few precedents. Notwithstanding the paucity thereof, we are of the opinion that a qualitative analysis of the brimful quantity of the criminal behavior of appellant and his companion toward their victim and adherence to firmly established principles of law require a determination that the capital crime announced by the death penalty statute and changed in the indictment was committed in Monroe County, Alabama.
The eminent and profound Joel Bishop had this to say little less than a century ago:
 "Since the same wrong may under various circumstances be detrimental to two or more governments, each having a jurisdiction of it within principles before stated, any one of the governments may punish so much thereof as it deems disturbing to its interest or peace, but will not take any account of the disturbance to or rights of another government. Whether more governments than one will punish the wrong is a question for another connection, but a mere liability to punishment abroad is no bar to a prosecution at home." Bishop, Crim.Law, § 136 (9th Ed. 1923)
Although addressed to the subject of the particular crime of larceny, the same author stated what could be well said as to the crime or crimes involved here:
 ". . . The proposition that a man is to escape punishment for the violation of our laws because he first violated those of a foreign country, is absurd in itself, and mischievous in its practical application. . . ." Bishop, Crim.Law, § 140 (9th Ed. 1923)
In Brill, Cyclopedia Criminal Law, § 287 (1922), we find:
 "But where an act is made up of a series of events, and is criminal in its result, all the occurrences need not have been done in the jurisdiction where it is sought to be punished, but it is enough if the result constitutes an offense under its law. . . ."
 "A person, who in one state does an act which takes effect in another state, may be punished in the latter state, and a person who commits a crime in one state for which he may be there punished, is liable for its continuous operation in another state."
For more than a century, the legislature of Alabama has recognized the proposition that a crime does not have to be committed wholly within Alabama for it to be cognizable and punishable here and has gone further by declaring that the offender can be punished in Alabama even though he was out of the state at the time of the commission of the offense charged but consummated it in this state through the intervention of an agent, or by any other means proceeding *Page 369 
directly from himself. In every Code of Alabama since 1852 are found provisions substantially as follows:
 "When the commission of an offense, commenced elsewhere, is consummated within the boundaries of this state, the offender is liable to punishment here, although he was out of the state at the commission of the offense charged, if he consummated it in this state through the intervention of an innocent or guilty agent, or by any other means proceeding directly from himself; and the jurisdiction in such case, unless otherwise provided by law, is in the county in which the offense was consummated." Title 15, § 92, Code of Ala. 1940 [now § 15-2-4, Code of Ala. 1975]
In the light of the foregoing considerations and determination, it is not necessary for us to determine whether, as claimed by appellant, no robbery was committed in Alabama. Appellant is on strong ground in arguing that robbery was committed in North Carolina, as shown by Lambert v. State, supra.
There is nothing, however, in Lambert v. State, supra, to preclude the existence of the crime of robbery in more than one state where there is continuous felonious violence in more than one state, directed at the same victim in regard to the same property, or where all of the essential elements of the crime of robbery take place in more than one state. In Lambert, the question of venue was involved, and it was held that the prosecution was properly brought in the Dadeville Division of the Circuit Court of Tallapoosa County, which is on the east side of the Tallapoosa River in said county. The court did not hold that the case could not have been brought in the Alexander City Division, which is west of the Tallapoosa River.
A likely opposite finding was suggested at least in Lambert
by reference to the statutory provision that, when an offense is committed partly in one county and partly in another, venue in either county is proper. Code of Ala. 1940, Tit. 15, § 94. The court was content, as it should have been, to decide the questions before it and not to pursue ramifications that did not affect the merits of such questions.
The fact that a particular crime is completed does not always require the conclusion that the crime is then discontinued. Much depends upon the nature of the crime. It could hardly be said that the crime of assault and battery ends with the first of several blows landing on the victim. Even though the crime comes into existence as of the moment of the first blow, it is not to be maintained that a battery does not continue with each successive blow. If there is sufficient intermittency between blows after the first, additional batteries may be said to have occurred, but without such intermittency, succeeding blows constitute a continuation of the battery that came into existence with the first blow. The crime of rape is consummated by penetration, but continued penetration constitutes a continuation of the rape.
Asportation is necessary in robbery as it is in larceny, but, to prosecute for robbery, asportation does not have to be for any extended distance. Golston v. State, 57 Ala. App. 623,330 So.2d 446 (1975). Even though robbery becomes complete by the act of asportation, upon or after the application of force to the victim, it cannot with reason be said that the robbery is terminated as long as all of the essentials of the crime are active and effective without interruption.
 ". . . As was clearly set forth by the Circuit Court of Appeals in the Armour Packing Co. Case [153 F. 1, 5, 6 (8th Cir.)]: `A continuing offense is a continuous, unlawful act or series of acts set on foot by a single impulse and operated by an unintermittent force, however long a time it may occupy. Where such an act or series of acts runs through several jurisdictions, the offense is committed and cognizable in each. . . .'" United States v. Midstate Horticultural Co., 306 U.S. 161, 166, 59 S.Ct. 412, 414, 83 L.Ed. 563, 567 (1938).
Whatever the range of the demoniacal thoughts that surged through the sadistic *Page 370 
minds of the defendants, it appears that uppermost and continuously therein was the desire, as shown by their efforts, to separate the stolen automobile from the victim. The confession of appellant includes evidence of a search for an accessible part of a river into which they could throw her body and thereby force a permanent separation between her and the automobile. Their efforts in this respect were to some extent evinced by their traveling as close as possible along the west bank of the Alabama River and following its downward course from Montgomery to Camden. They never ceased their effort to separate the two, whether Naomi from the automobile or the automobile from Naomi — not even after they had stolen another motor vehicle at Camden. Even then, they continued their effort of asportation, to separate the one from the other, by their fiendish procedure in murdering her. Their effort to take permanently and indefinitely away from her the automobile was thwarted only by the automobile's sudden and unexpected immobility.
The crime of robbery is usually not a continuing offense, but the nature of it is such that it can, and does at times, continue beyond the point of time and place of its coming into existence as a full-fledged crime. As long as it can be correctly said that one is robbing another, that he continues, by force applied to the victim, to separate or attempt to separate the victim from the object of the robbery, the robbery, though complete as to the commission of all essential elements thereof, continues. The extended distance between Hudson, North Carolina, and Monroe County, Alabama, and the two days and nights between defendant's assault of Naomi and her death may obscure, but they do not destroy, the logical connection between the two: the unification of the crime of robbery and the crime of intentional homicide into the capital crime of which defendant was found guilty.
To accept appellant's view as applied to the facts herein would require a determination to the effect that under any pertinent provision of any death penalty statute of North Carolina, similar to the Alabama statute, the defendant could not be held guilty of intentionally killing Naomi in the process of a robbery of her if she had been killed by throwing her out of the automobile ten minutes after defendant and Baldwin had seized possession of it by force exerted against the possessor.
The relationship between cause and effect is not determinable by boundary lines, whether state or county. The causal relation between the robbery and the killing is not logically affected by the state lines or county lines that were crossed.
A contention similar to appellant's contention, that the robbery was completed in North Carolina when the automobile was taken from the control of Naomi and therefore there was no robbery in Alabama, was rejected by the highest court of Kentucky in Tipton v. Commonwealth, Ky., 456 S.W.2d 681 (1970). In that case, defendant and companion at gunpoint forced their way into victim's automobile which was stopped at a stop light in Campbell County; they there tied him up and put him in the back seat of the automobile, and one of them drove the automobile into Clark County in Kentucky. While in Clark County, they forced the victim to get out of the automobile and accompany them several hundred yards along a ravine where they tied him to a tree, pistol whipped him, took what money he had on him, and left him there. The court said:
 "The property of which the indictment charged that Hoskins had been robbed was the automobile. Tipton's contention is that the crime was completed in Campbell County when it was taken from his possession and control.
. . . . .
 "If the rightful owner's possession of stolen property is deemed to continue wherever it is carried by the thief, a fortiori it must be so when the victim himself is carried along with it. We have no doubt that the theft in this case continued into Clark County, and so did the element of armed force. Even, therefore, *Page 371 
in the absence of Criminal Code § 21 the Clark Circuit Court would have had proper venue."
A similar conclusion was reached where jurisdiction, rather than venue, was involved, in Jordan v. United States, (D.C. App.), 350 A.2d 735 (1976). In that case, appellant and two fellow convicts escaped from confinement and commandeered an automobile in Virginia forcing its two occupants to accompany them into the District of Columbia where they were released. One of the occupants was robbed at knife point by the trio some time before she and her companion were set free. There was some question whether the robbery occurred in Virginia or in the District of Columbia. The court disregarded the boundary line in holding in accordance with what it had held in Carter v.United States, 96 U.S.App.D.C. 40, 223 F.2d 332 (1955), that the robbery continued into the District of Columbia even though the forcible taking had occurred in another state. It said:
 "But even accepting appellant's version of the facts as true, we are not persuaded that such a defense would preclude a conviction for robbery in the District of Columbia. It is undisputed that appellant did not part company with the victim of the robbery until after he and his confederates had driven well inside the District. During the period in which the robbers and victims were together in this city, appellant and his companions retained possession of the money only through threat of force. It was not until the original occupants of the automobile were dropped off that appellant and his friends made their getaway with the money seized in the robbery.
 "Under the law of this jurisdiction, robbery takes on the characteristics of a continuing offense when there is a lapse of time between the taking and the safe escape of the robber with the proceeds. In Carter v. United States, 96 U.S.App.D.C. 40, 223 F.2d 332 (1955), there was evidence that the defendant committed a robbery and later killed a pursuing policeman a few blocks away. The defendant was acquitted of premeditated murder but convicted of felony-murder, i.e., a killing incidental to the perpetration of a felony. He argued on appeal that the conviction should be reversed because the robbery was completed when the murder occurred. The court rejected this contention, holding that the robbery was still in progress because the appellant had not yet secured the fruits of the crime when the policeman was shot.
 "Under this view, it necessarily follows that the execution of the robbery, even though the forcible taking had occurred in another state, was not finished until the robbers had accomplished by force of arms their getaway with the loot — an event which occurred in this jurisdiction."
We come to the conclusion that the facts amply justify the finding that defendant and his companion intentionally killed Naomi Rolon while robbing her of her mother's automobile in Monroe County, Alabama, without relying upon the well established continuing offense principle applicable to larceny, which is said to be based upon a "fiction" that every act of removal or change of possession by the thief constitutes a new taking and asportation. 21 Am.Jur.2d, Criminal Law, § 392, page 410. Courts of some jurisdictions do not apply the principle where there has been a crossing of a boundary between states saying that the principle is a common law principle applicable only to boundaries between counties. Doane v. Commonwealth, Va., 237 S.E.2d 797 (1977). In Alabama, venue is in either the county in which the property is stolen or in the county into which the stolen property is taken. Code 1940, Tit. 15, § 98. If the property is stolen elsewhere and brought into Alabama, venue is in the county into which the property is brought. Code 1940, Tit. 15, § 97. By Tit. 14, § 337, the person who fraudulently brings into this state any personal property which he knew was stolen elsewhere is punishable as if he had stolen it in this state.
Although our conclusion herein is not dependent upon the generally accepted view as to larceny, it appears that there is as much, if not more, logic in applying it to a *Page 372 
robbery which necessarily includes a larceny if, as here, the force applied against the victim is continuously synchronous with the asportation. In that circumstance, the "fiction" evolves into a fact.
That there have been cases in which the "fiction" applicable to larceny has been held inapplicable to other offenses, such as burglary and robbery, is because the other offense retained its usual non-ambulatory nature. In burglary, the property burglarized is usually immovable. In robbery, the person robbed is usually left where he was robbed and not transported by the robbers. When he is transported and carried away by the robbers with the goods forcibly taken from him, the crime as a whole is as ambulatory as larceny. This is manifest in what was said by Chief Justice Brickell in Smith v. State, 55 Ala. 59 (1876) as follows:
 "The common law was inflexible, not only that a man should be tried, on a criminal accusation, by his peers, but that his triers should be of the vicinage — near the place where the offense was alleged to have been committed. The rule, if not gradually relaxed, was at least construed to be satisfied, if the trial was by a jury of good and lawful men of the county in which the offense was committed, or alleged to have been committed. An exception was early recognized, if the offense was in its nature continuous. A simple larceny furnished the most frequent example. The possession of the goods stolen by the thief was a larceny in every county into which he might carry them. The trespass, committed in the original taking, did not, in contemplation of law, divest the true owner of the possession; and every moment's continuance of the trespass and felony is, in legal consideration, a new caption and asportation. — 1 Lead. Cr. Cases, 224.
 "The exception was, however, limited to simply larceny. If the original offense was compound, involving more than a simple caption and asportation, while the simple larceny was the subject of indictment in any county into which the thief carries the goods, the compound offense is indictable only in the county in which it was committed. 1 Lead. Cr. Cases, 225; 3 Greenl.Ev. § 152; 1 Bish. Cr. Pro. § 60. If, in the course of a robbery, larceny is committed, the offender could be convicted of the latter, not of the former offense, in any county into which he might carry the goods. So, if the offense is aggravated, because of the place of its commission, as in a store, or other house, the security of which is intended to be protected; of the aggravated offense, the offender is indictable in the county in which it was committed, and not in another county to which the goods may be carried. The offense committed in the latter county is the unlawful caption and asportation, not accompanied with an invasion of the security of a house within the protection of the law creating the compound offense.
 "The statute (R.C. § 3948) declaring, `where property is stolen in one county, and carried into another, the jurisdiction is in either county,' is but an affirmation, not an enlargement of the common-law rule to which we have referred, and does not extend to compound offenses, like that imputed to the appellant. While he was indictable in Wilcox county for a felony, if he was guilty of there stealing goods from a ware-house, exceeding in value fifty dollars, he was only guilty of petit larceny, a misdemeanor, if the value of the goods was less than one hundred dollars, in Dallas county, to which he carried them. The felony was not ambulatory, but, by force of the statute creating it, locality is of its essence."
We are deeply mindful of the principle that criminal statutes are to be strictly construed, but adherence to strict construction does not require an unreasonable interpretation, an interpretation that the legislature could not have intended. It could not have intended that a robbery commencing at Lanett, Alabama, and continued to a mile from the eastern boundary of Alabama, where the victim of the robbery was killed, could be punished under the Death Penalty and Life Imprisonment Without Parole Statute of Alabama, but that one could *Page 373 
escape punishment under such statute if he commenced the robbery of a person in West Point, Georgia, crossed the Chattahoochee with the victim, and killed her in Lanett, Alabama. The legislature in enacting a law designed to cover the most atrocious crimes conceivable did not intend to provide a crime shelter for interstate criminals.
Prior to the introduction into evidence of the confession by the defendant of all the material facts that occurred from the time he and his companion seized the automobile in North Carolina and killed Naomi in Monroe County, Alabama, there was ample testimony, apart from any admission by him, of the corpus delicti. His confessions or admissions consisted chiefly of a cassette tape of a conversation between him and two officers, which tape was played to the jury and admitted in evidence, and a writing signed by him as to the essential details, which also was admitted in evidence. The testimony that constituted evidence of the corpus delicti apart from any confessions or admissions was that of witnesses as to what they actually observed. It was shown by these witnesses that the North Carolina automobile and the slain body of Naomi had been found, the keys to the automobile had been found upon defendant's companion when they were stopped at Lanett, Alabama, in the truck that had been stolen at Camden, and that the North Carolina automobile tag that had been taken from the automobile was in the truck in which the two were riding. This went far beyond the requirement of proof of the corpus delicti. That requirement is met when there is evidence that a certain result has been produced and that some person is criminally responsible for the conduct that produced it. Burt v. State,259 Ala. 618, 68 So.2d 53 (1953); Langham v. State, 243 Ala. 564, 11 So.2d 131 (1942); Price v. State, 51 Ala. App. 21,288 So.2d 803 (1974); Hearns v. State, 47 Ala. App. 725,261 So.2d 64 (1972). The corpus delicti should be proved before the confession is admitted in evidence, but the court may justifiably vary the order of the presentation of the evidence in that respect. McDowell v. State, 238 Ala. 101, 189 So. 183
(1939); Davenport v. State, 53 Ala. App. 326, 299 So.2d 767, cert. denied, 293 Ala. 751, 299 So.2d 771 (1974); Trimble v.State, 40 Ala. App. 354, 114 So.2d 164 (1959).
Notwithstanding the testimony by defendant, at his election out of the presence of the jury, denying that he had signed the written statement introduced in evidence and claiming abuse by officers that would, if true, preclude the admission in evidence of any confession or incriminating statement by him, the evidence is overwhelmingly to the effect that he was not abused or mistreated in any respect, that he was fully advised of his rights, including his right to remain silent and his right to counsel, that he voluntarily and understandingly waived such rights, and that he voluntarily and understandingly made the confession and admissions attributed to him, including particularly the written statement signed by him and the conversation shown by the cassette tape. We have listened to the replay of the tape, which to us bears all indicia of voluntariness, responsibleness and understanding of defendant, and trustworthiness of the incriminating material.
Although the evidence shows that Baldwin, instead of appellant, actually struck the fatal blow, it shows that appellant was an active participant in all of the criminal conduct involved including the robbery and the intentional killing of Naomi. A finding that appellant was guilty of the crime charged in the indictment is justified without reliance to any extent upon the felony-murder doctrine. They factually intended to kill her as they did. The verdict and judgment is not in contravention of the provision of the death penalty statute that "evidence of intent under this section shall not be supplied by the felony-murder doctrine." We so held after remandment in Ritter v. State, 361 So.2d 654, supra.
Our review includes a review of the action of the trial court in setting and conducting the hearing and making a determination as to what punishment should be imposed after receiving the verdict of the jury, all as provided by § 13-11-4 of the *Page 374 
Death Penalty and Life Imprisonment Statute. The trial court fully complied with the cited section, and its findings and sentence are fully supported by the evidence. A final determination in the sentence imposed did not go beyond the limits of the judicial discretion vested in the trial court. We do not find sufficient mitigating circumstances or such a lack of aggravating circumstances as to justify an interference with the final judgment and sentence of the trial court.
After the jury returned a guilty verdict and fixed punishment at death, the trial court set a hearing for presentation of aggravating and mitigating circumstances pursuant to the capital felony statute. At that hearing, the State only reintroduced the tape recording of the appellant's confession. The trial court then allowed the appellant to put on any evidence of mitigating circumstances he desired.
The appellant called his mother as a witness who testified concerning his childhood and his family history. She said he went to school, played basketball, and made average grades at school to or through the tenth grade, at which time a robbery occurred for which he was convicted and was serving time and escaped just before the crime here involved. She stated that when he was approximately four years of age, he fell from a two story building and was knocked unconscious for a month. She stated that he sometimes had spasms. The appellant likewise called his grandmother as a witness who testified to substantially the same facts as his mother had. She testified that the appellant had never known his father who had died before he was born. The appellant likewise took the stand in his own behalf and related his family history. He stated that he was raised without a father in the family and that his older brother was the male head of the household. When he was asked several questions concerning the crime in question, he refused to answer.
At the end of the appellant's testimony, the following occurred:
 "THE COURT: Edward, this is your day in court to tell me what you have in your own behalf in the way of mitigating the sentence that has been imposed on you and I want to give you an opportunity to tell me whatever you feel like will help you in this regard. Do you want to tell me anything else other than what you've been asked about?
* * * * * *
 "THE DEFENDANT, EDWARD HORSLEY: Yeah, I feel like all my life I've been put down because people said that I had a mental problem and everything. I was in a joint there one time and nobody ever wanted to give me an opportunity to speak for myself or nothing — everybody else always wanted to speak for me. I don't think I should get no electric chair because I don't deserve the electric chair. That's all."
After the hearing on aggravating and mitigating circumstances, the court made the following findings for the record:
 "Well, the question of your guilt or innocence has been referred to a jury in accordance with the law of this state and the jury has returned a verdict of guilty in your case and has set your sentence at death by electrocution. It is my duty to pronounce judgment upon that sentence and it is my duty to pronounce that you are, in fact, guilty of the crime of robbery with the aggravated circumstances of intentionally killing the victim. The Court, having conducted a hearing pursuant to Title 15, § 342 (6) of the 1940 Code of Alabama, as amended, to determine whether or not the Court would sentence Edward Horsley to death or to life imprisonment without parole and the Court having considered the evidence presented at the trial and at said sentence hearing, the Court makes the following findings of fact: The Court first considered the aggravating circumstances as set out in Title 15, Section 342 (8) of the 1940 Code of Alabama, as amended:
 "(a) The Court finds that the capital felony of robbery in the course of which the victim was intentionally killed was committed by the defendant while he was under sentence of imprisonment in the state of North Carolina but from which he had escaped. *Page 375 
 "(b) The Court further finds that the defendant was under sentence of conviction in the state of North Carolina involving robbery, in the course of which a police officer was shot.
 "(c) The Court further finds that the capital felony was committed while the defendant was in the commission of robbery or flight after committing said crime of robbery.
 "(d) The Court further finds that under the circumstances of this case as revealed by the record, the capital felony was especially heinous or atrocious or cruel.
 "The Court now considers mitigating circumstances as described in Title 15, Section 342 (9) of the 1940 Code of Alabama, as amended:
 "(a) The court finds the only mitigating circumstance would be the age of the defendant at the time of the commission of the crime, to-wit, nineteen.
 "The Court having considered the aggravating circumstances and the mitigating circumstances and after weighing the aggravating and mitigating circumstances, it is the judgment of the Court that the aggravating circumstances far outweigh the mitigating circumstances and that the death penalty as fixed by the jury should be and is hereby accepted."
The trial court then sentenced the appellant to suffer death by electrocution as prescribed by law.
We have reviewed the aggravating and mitigating circumstances set out in the record and the trial court's findings relative to those circumstances. The appellant was given an opportunity to present any mitigating circumstances he desired. Alabama's capital felony act, supra, fully comports with Lockett v. Ohio,438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 [1978], in that it does not preclude from consideration as a mitigating factor"any aspect of a defendant's character and record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence of less than death." After review of the hearing on aggravating and mitigating circumstances, we find no error on the part of the trial court in reaching the conclusion that the aggravating circumstances outweigh the mitigating circumstances in this case and that the death penalty should be imposed.
We have passed upon all questions raised by the appellant on appeal. In addition, we have searched the record for any error prejudicial to defendant and have found none. The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this court under the provisions of § 6.10 of the New Judicial Article (Constitutional Amendment No. 328). His opinion is hereby adopted as that of the court. The judgment below is hereby
AFFIRMED.